# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

KRYSTAL SHAVON WASHINGTON      CIVIL ACTION NO. 03-2057

VERSUS      JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.      MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 66) filed by Defendant City of Shreveport ("the City") and a Motion for Summary Judgment (Record Document 79) filed by Defendant Willie McDuffie ("McDuffie"). Plaintiff Krystal Washington ("Washington") opposes both motions.

This lawsuit was brought by Washington against the City and McDuffie pursuant to 42 U.S.C. Section 1983 and the Eighth and Fourteenth Amendments to the United States Constitution; Article One, Sections 2 and 3 of the Constitution of the State of Louisiana; and Articles 2315 and 2320 of the Louisiana Civil Code. Washington's claims arise out of her incarceration in the Shreveport City Jail from October 3, 2002 to November 7, 2002 and her voluntary participation during that same time period in the work release program through the Shreveport Public Works Department. The instant lawsuit concerns essentially two claims by Washington: (1) that she was sexually abused and harassed by McDuffie, an employee of the City's Public Works Department who supervised her during her participation in the City's Work Release Program, and (2) that she was not released from the Shreveport City Jail timely.[1]

---

[1]Washington originally argued that her due process rights under the Fourteenth Amendment were violated when McDuffie threatened to place her in lockdown and prison

For the reasons which follow, the Motions for Summary Judgment filed by the City and McDuffie are **GRANTED IN PART** and **DENIED IN PART** with the Court declining to exercise jurisdiction over Washington's remaining state law tort claims.

## I.     FACTUAL AND PROCEDURAL BACKGROUND.

On October 8, 2002, Washington pled guilty to one count of underage entering a licensed premise and was sentenced to pay a fine of $100.50 or to serve 10 days in the Shreveport City Jail, consecutive to any other sentence. See Record Document 66, Exhibit A-5.  Washington also pled guilty on October 8, 2002 to one count of aggravated assault and was sentenced to 90 days in the Shreveport City Jail, to be served consecutive with any other sentence. See id. Shreveport City Jail release records indicate that Washington was incarcerated in the City Jail from October 3, 2002 until November 7, 2002. See id.

Washington voluntarily participated in the Work Release Program during her incarceration in the Shreveport City Jail. See Record Document 66, Exhibit A-6. The Work Release Program allowed certain prisoners to earn three days credit for each day worked in the program. See id. Jerry Johnson ("Johnson") was hired in 1995 to supervise the Work Release Programs for the City of Shreveport and was supervising the program during the times relevant to this lawsuit. See Record Document 85, Exhibit B at p. 7, lines 20-21. Washington signed her "Work Release Program Agreement" and her "Work Release

_____

officials allegedly placed her in lockdown after she complained of McDuffie's alleged sexual abuse and harassment during her participation in the City's Work Release Program. However, in the proposed pretrial order (Record Document 95) filed by the parties on June 9, 2006, Washington makes absolutely no mention of her allegations relating to "lockdown." Thus, this Court assumes that Washington has abandoned these claims and deems any such claims abandoned. Thus, any claims relating to this issue are dismissed and will not be discussed further by this Court.

Program Injury Release" on October 8, 2002.  <u>See</u> Record Document 66, Exhibit A-6. Work Release Program records indicate that Washington worked eight hours each day beginning Tuesday, October 8 through Thursday, November 7, 2002.  <u>See id.</u>

In 2002, McDuffie was employed by the City as the Light Equipment Operator in the Streets and Drainage Division of the Public Works Department.  <u>See</u> Record Document 85, Exhibit H.  During the time period relevant to this lawsuit, McDuffie performed duties with the Work Release Program and apparently served as a crew leader for the program. McDuffie's duties included picking up inmates from the City Jail and transporting them to work sites where they would perform services as part of the Work Release Program.  <u>See</u> Record Document 66, Exhibit A-6.

On October 9-12, 2002, Washington participated in the Work Release Program by working with the Streets and Drainage Division performing litter pickup.  <u>See id.</u>  She was picked up and transported to the work site on those four days by McDuffie.  <u>See id.</u> Beginning on or about October 10, 2002, Washington alleges that McDuffie fondled her breast once, touched her inner thigh, and made sexual remarks to her, including repeatedly asking her for sex and telling her that she could "go home soon" if she cooperated with him sexually.  <u>See</u> Record Document 37, ¶¶ 6-8.  On or about October 11, 2002, Washington complained to a jailer at the Shreveport City Jail about the sexual abuse and harassment. <u>See</u> Record Document 66, Exhibits A-1, C at p. 23.  Washington was asked by prison officials to write a statement regarding the sexual abuse and harassment.  <u>See id.</u>, Exhibit C at pp. 23-24.  Prison officials then contacted Rita Caldwell ("Caldwell"), a detective and sex crimes investigator with the Shreveport Police Department.  <u>See id.</u>, Exhibit A-1, C at pp. 25-27.  Caldwell instituted an investigation of the alleged sexual abuse and harassment

by McDuffie on or about October 12, 2002. <u>See id.</u>, Exhibit A-1. Washington admitted to Caldwell that she was reluctant to make a formal complaint <u>See id.</u> Caldwell turned the investigation over to the Caddo District Attorney's Office. <u>See id.</u>, Exhibit A. The Caddo District Attorney's Office eventually charged McDuffie with extortion and malfeasance. <u>See id.</u>, Exhibit A-2. The Court is not aware, nor have the parties advised the Court, of the status of those charges at this time.

After complaining of the sexual abuse and harassment on October 12, 2002, Washington never worked with McDuffie in the Work Release Program again. <u>See id.</u>, Exhibit C at pp. 26-27. Washington also admits that after October 12, 2002, she was never sexually abused or harassed by McDuffie again. <u>See id.</u>, Exhibit C at p. 27. However, she continued to participate in the Work Release Program until her release from incarceration. <u>See id.</u>, Exhibit C at p. 57.

Washington filed the instant lawsuit on November 6, 2003 in the First Judicial District Court, Caddo Parish on allegations of sexual harassment, sexual battery, and related events she contends occurred while she was housed in the Shreveport City Jail and participating in the Work Release Program. <u>See</u> Record Document 1. The City and McDuffie removed the case to federal court on November 6, 2003 and an order of removal was entered on November 13, 2006. <u>See</u> Record Documents 4 & 6. The City filed its motion for summary judgment on September 30, 2005, seeking dismissal of all of Washington's claims stated in her amended complaint. <u>See</u> Record Document 66. After receiving an extension of time, McDuffie filed his motion for summary judgment on January 31, 2006, also seeking dismissal of Washington's amended complaint in its entirety. <u>See</u> Record Document 79.

## II.    LAW AND ANALYSIS.

### A.    Summary Judgment Standard.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);  New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552).  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996).  The nonmovant's burden may not be satisfied by conclusory allegations,

unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., 477 U.S. at 248, 106 S. Ct. at 2510.

With these principles in mind, the Court now turn to a review of the claims at issue.

### B.  Washington's Title 42, United States Code, Section 1983 Claims Against McDuffie.

"To establish a claim under 42 U.S.C. § 1983, [Washington] must show that [McDuffie] acted under color of state law to deprive [her] of a right secured by the Constitution and laws of the United States." White v. Scrivner Corp., 594 F.2d 140, 141 (5th Cir. 1979).

## 1.    Washington's Sexual Abuse and Harassment Claim.

Washington maintains that McDuffie sexually abused and harassed her and asserts these claims as constitutional torts by alleging violations of various amendments to the United States Constitution.  Washington has alleged violations of not only the Eighth Amendment, but also a violation of the Equal Protection Clause of the Fourteenth Amendment.[2]

This Court is not aware of any Fifth Circuit jurisprudence directly addressing the alleged sexual abuse and harassment of an inmate by a Work Release Program employee such as McDuffie, and the parties have not pointed to any such case law.  Despite Washington's Fourteenth Amendment claim, this Court finds that her situation is more analogous to that of an inmate allegedly subjected to sexual abuse and harassment by a prison official.  Other appellate courts have agreed and have held that claims such as Washington's against McDuffie are bounded by the Eighth Amendment[3] – "the explicit textual source of the constitutional protection . . . in the prison context."  <u>See</u> <u>Adkins v. Rodriguez</u>, 59 F.3d 1034, 1036-37 (10th Cir. 1995) (stating that the treatment a prisoner

---

[2]Under the guise of equal protection, Washington seemingly argues that the mere fact that McDuffie "supervised" female prisoners participating in the Work Release Program was unconstitutional.  Washington admits that such allegation stands for the "proposition that the City could be liable for maintaining a policy of allowing someone without training like McDuffie to 'search' female prisoners."  <u>See</u> Record Document 83 (Plaintiff's Memorandum in Opposition to Defendant Willie McDuffie's Motion for Summary Judgment) at 19.  Thus, this argument will be addressed by the Court when ruling on the section 1983 claims against the City.

[3]The Eighth Amendment to the United States Constitution states:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment). Further, all jurisprudence cited by the parties in the context of equal protection pertains to sexual abuse and harassment in the workplace between employer and employee, which clearly is not applicable here as there was no employer/employee relationship between Washington and McDuffie. Neither the facts of this case, nor the law provide support to free Washington from the Eighth Amendment; thus, this Court will analyze Washington's section 1983 claims against McDuffie relating to sexual abuse and harassment under the Eighth Amendment.[4]

Moreover, while this issue was not fully addressed by the parties, the Court finds that McDuffie was acting under color of state law at the time of the alleged incidents at issue in this case. In West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250 (1988), the Supreme Court explained that to be "acting under color of state law requires that the defendant in a section 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 49, 108 S.Ct. at 2255. The jurisprudence firmly establishes that "a defendant in a section 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. at 49-50, 108 S.Ct. at 2255. Washington alleges that McDuffie abused his state-conferred position of working with inmates participating in the Work Release Program by engaging in sexually abusing and harassing behavior. Washington implies that the reason

---

[4]Even if Washington's section 1983 claims relating to sexual abuse and harassment were analyzed under the Fourteenth Amendment, the Court has serious doubts as to whether such claims would survive summary judgment under the "severe or pervasive" standard applicable to equal protection gender discrimination claims pursuant to the Fourteenth Amendment.

McDuffie was able to take the alleged actions he did was because of his state authority. The alleged incidents were possible only because McDuffie's access to Washington due to his employment and his position with the City's Public Works Department. Regardless of whether McDuffie took the alleged actions "in pursuit of [his] own interests," he was able to do so solely because of the position of authority he enjoyed. Walker v. Taylorville Correctional Center, 129 F.3d 410, 414 (7th Cir. 1997).

A two-part test governs whether a prisoner such as Washington has established a constitutional violation under the Eighth Amendment. First, Washington must demonstrate, objectively, that the alleged deprivation of her constitutional rights was sufficiently serious. See Harper v. Showers, 174 F.3d 716, 719 -720 (5th Cir. 1999); Copeland v. Nunan, No. 00-20063, 2001 WL 274738, *2 (5th Cir. Feb. 21, 2001). The jurisprudence is clear that "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Boddie v. Schnieder, 105 F.3d 857, 861 (2nd Cir. 1997). Second, under a subjective standard, Washington must establish that the responsible prison officials acted with deliberate indifference. See Harper, 174 F.3d at 719 -720; Copeland, 2001 WL 274738, *2. "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the [sexual harassment and] abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Boddie, 105 F.3d at 861.

"[S]exual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are offensive to human dignity. However, not every malevolent touching gives rise to a federal cause of action." Copeland, 2001 WL 274738, *2 (internal quotations omitted) (citing Hudson v. McMillan,

503 U.S. 1, 112 S.Ct. 995 (1992). In <u>Hudson</u>, the Supreme Court stated that " [t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Id.</u> at 9, 112 S.Ct. at 1000 (internal quotations omitted). Simply put, a prisoner can not recover under section 1983 for *de minimis* physical and/or psychological injuries.

In this case, Washington alleges that over the course of four days, McDuffie fondled her breast on one occasion, touched her inner thigh, grabbed her wrist, verbally asked her for sex, and made other sexual remarks. <u>See</u> Record Document 66, Exhibit C (Deposition of Krystal Washington) at p. 51, lines 11-13; p. 33, lines 12-16; p. 71, lines 11-12; and p. 33, lines 17-23. Washington admitted in her deposition that she suffered no physical injury as a result of the incident at issue in this case. <u>See id.</u> at p. 61, lines 5-6. Washington stated that she "filed this lawsuit so [she] can be at peace." <u>Id.</u> at p. 60, line 5. Washington does allege that she suffered psychological injuries as a result of the incidents. She maintains that she suffered mental injuries for a year and a half, namely depression and a headache, specifically stating "mentally it's a headache." <u>Id.</u> at pp. 61-62. Washington did not see a psychiatrist, but stated in her deposition that she went to counseling sessions in 2003 for depression and anger management at Brentwood. <u>See id.</u> at pp. 63-64. Yet, Washington conceded that she was depressed about not only this lawsuit, but "a lot of things," including her relationship with her boyfriend. <u>Id.</u> at pp. 64-65. Interestingly, when asked if she told her counselor that she was depressed about what happened to her at the Shreveport City Jail, Washington stated: "No, I didn't put it exactly in those words because that wasn't her business." <u>Id.</u> at p. 65, lines 13-17. Washington

stated in her deposition that she saw her counselor once a week for two weeks – a total of two visits. See id. at p. 66, lines 7-13.

Following the reasoning of both Boddie, 105 F.3d at 861 (inmate was allegedly verbally harassed, fondled, and pressed against without his consent) and Copeland, 2001 WL 274738, *3 (inmate suffered unwanted touchings), Washington has failed to state an Eighth Amendment claim. The Court finds that Washington has not alleged a physical injury, other than a headache; thus, it is clear that she has no lasting physical injury. She has alleged nothing beyond merely *de minimis* psychological injuries, as she admitted in her deposition that her depression was also related to her relationship with her boyfriend and that she only went to counseling for two weeks. The incidents Washington complains of occurred over the course of four days. Further, her allegations of verbal sexual harassment and touching in a sexual manner mirror those in Boddie, wherein the court found that the incidents were not severe enough to be objectively, sufficiently serious, nor were the incidents cumulatively egregious in the harm they inflicted. See Boddie, 105 F.3d at 861; see also Jane Doe 5 v. City of Haltom City, No. 03-10631, 2004 WL 1777253, **1 (5th Cir. Aug. 10, 2004) (stating that "verbal sexual harassment does not violate [an] . . . inmate's constitutional rights"). The Boddie rationale applies here. McDuffie's alleged conduct – both verbal and physical touching – was "despicable and, if true, they may potentially be the basis of state tort actions." However, such conduct does "not involve a harm of federal constitutional proportions as defined by defined by the United States Supreme Court," especially in the absence of physical injuries and in the presence of only *de minimis* claimed psychological injuries on the part of Washington. See Boddie, 105 F.3d at 861; Copeland, 2001 WL 274738, *3. Simply put, the Court finds McDuffie's

alleged conduct to be similar to the type of conduct that has been held insufficient to establish an Eighth Amendment violation. See, e.g., Berryhill v. Schriro, 137 F.3d 1073 (8th Cir. 1998) (touching of inmate's buttocks by prison employees, though inappropriate and sanctioned by prison, does not violate the Eighth Amendment) and Buckely v. Dallas County, No. 397-CV-1649BC, 2000 WL 502845, *5 (N.D. Tex. April 27, 2000) (prison guards' fondling of inmate in an inappropriate manner while conducting a routine pat-down search and stopping when inmate did not become excited does not violate Eighth Amendment). Accordingly, Washington's section 1983 claims against McDuffie relating to sexual abuse and harassment are dismissed with prejudice.[5]

## 2. Washington's Due Process Claims.

Washington alleges that her due process rights under the Fourteenth Amendment to the United States Constitution were violated when she was not timely released from the Shreveport City Jail. In her deposition, Washington stated that "they changed my time from 90 days to 150 days." Record Document 66, Exhibit C at p. 28, line 9. Presumably, this belief gave rise to Washington's claim that she was not released from jail timely.

When asked further about her "time being changed," Washington stated that Johnson, former supervisor of the Work Release Program, changed her time. Id. at p. 29,

---

[5]During his deposition, McDuffie asserted his Fifth Amendment right to remain silent in light of an ongoing criminal investigation. See Record Document 83, Exhibit A (Oral Statement of Willie McDuffie). There is no dispute that the prevailing rule is that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. See Farace v. Indep. Fire Ins. Co., 699 F.2d 204, 210 (5th Cir. 1983) (citing Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551 (1976)). However, in light of this Court's analysis of Washington's sexual abuse and harassment claims, wherein it accepted Washington's allegations as true, there is simply no need to apply the adverse inference against McDuffie.

lines 19-23. Notwithstanding the fact that the records of the Shreveport City Court refute Washington's belief of her time being changed, this Court notes that Washington is not alleging that McDuffie affected her release date. Moreover, McDuffie was an employee of the City's Public Works Department and could not and did not affect Washington's release date. Thus, even if Washington's claim of a due process violation arising out of her alleged untimely release from the City Jail is actionable, such claim is not properly asserted against McDuffie and is dismissed with prejudice.

Washington also alleges that McDuffie violated her constitutional rights, presumably her Fourteenth Amendment due process rights, by threatening to have her time extended or threatening to have her thrown out of the Work Release Program. The Fifth Circuit has reasoned that mere threats are not *per se* violations of constitutional rights, specifically stating that "[t]hreats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation." Citizen Action Fund v. City of Morgan City, 154 F.3d 211, 216 (5th Cir. 1998), withdrawn on other grounds, 172 F.3d 923 (5th Cir. 1999). Other courts have agreed and held in the context of due process rights that "[t]here is no civil rights cause of action under the Constitution for 'threats to violate due process rights.' To be actionable, plaintiffs' due process rights must have actually been violated." Arnold v. Truemper, 833 F.Supp. 678, 683 (N.D.Ill. 1993); see also Dick v. Gainer, No. 97C8790, 1998 WL 214703, *5 (N.D.Ill. 1998) ("mere threats do not rise to the level of a constitutional violation. There is no constitutional right to be free from *threats* of arrest; an actual civil rights violation must occur before a cause of action arises under section 1983").

The record is clear that after complaining about the alleged sexual abuse and

harassment, Washington continued to work in the Work Release Program.  <u>See</u> Record Document 66, Exhibit C at p. 57.  Shreveport City Court records and release records indicate that Washington served only 36 days of her 100 day sentence, entering jail on October 3, 2002 and being released on November 7, 2002.  <u>See</u> Record Document 79, Exhibit 3.  Thus, it is clear that there were only threats, at most, to have Washington's time extended or to have her thrown out of the Work Release Program.  Because these threats did not result in a constitutional deprivation, a section 1983 claim never accrued.  Accordingly, Washington's claims that McDuffie violated her constitutional rights by threatening to have her time extended or threatening to have her thrown out of the Work Release Program are dismissed with prejudice.

### C.    Washington's Title 42, United States Code, Section 1983 Municipal Liability Claims Against the City.[6]

Washington alleges that certain policies and practices of the City were unconstitutional.  First, she alleges that the City's failure to properly train and supervise McDuffie necessitates a finding that the City is liable under section 1983 for failure to train and supervise its employees.  Washington further alleges that the City's policy of allowing male employees to closely supervise and/or search female inmates participating in the Work Release Program is unconstitutional.  Finally, Washington contends that  the City violated her due process rights by allowing her to serve eight days more in the City Jail than her sentence provided.

---

[6]Washington has sued McDuffie in both his individual and official capacities.  <u>See</u> Record Document 95, ¶ B.  Her suit against McDuffie in his official capacity is treated as a claim against the City of Shreveport.  <u>See</u> <u>Brooks v. George County, Miss.</u>, 84 F.3d 157, 165 (5th Cir. 1996).

Municipal liability under section 1983 may not be based upon a theory of *respondeat superior*.  See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978).  Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983."  Id. at 694, 98 S.Ct. at 2037-38.  The complained of conduct, "whether formally declared or informally accepted, must be the policy of the city government if it is to be the basis of city liability."  Bennett v. City of Slidell, 728 F.2d 762 (5th Cir. 1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476 (1985).  Further, if there is no underlying constitutional violation, then no section 1983 action against the municipality can exist.  See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573 (1986) ("[b]ut this was an action for damages, and neither Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); Trigalet v. City of Tulsa, Oklahoma, 239 F.3d 1150, 1156 (10th Cir. 2001) ("In sum, we hold that absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed on the City of Tulsa on account of its policies, customs, and/or supervision with regard to the individual defendants.").

As stated above, a finding that there is no underlying constitutional violation

precludes section 1983 liability against a municipality. Here, because this Court found that McDuffie did not engage in conduct violative of the Constitution, there is no municipal liability under section 1983 on the part of the City. Notwithstanding, in an abundance of caution, this Court will analyze the merits of Washington's section 1983 claims against the City.

### 1. The City's Alleged Failure to Train and Supervise.

Washington contends that McDuffie's alleged admission to her that he had multiple sexual encounters with female prisoners indicates "a total lack of supervision by the City of its workers and prisoners." Record Document 71 at 21. Washington argues that to delegate authority to an employee such as McDuffie, who has no training as a jailer or a correctional officer, shows lack of training and supervision. See id. She further argues that such "a widespread practice can under these circumstances . . . be deemed an acquiescence by superiors and thus adopted by the City." Id. Washington also alleges that the City's lack of training and supervision led to McDuffie constitutional violations. See id.

Washington correctly notes that the Supreme Court, in City of Canton, Ohio v. Harris 489 U.S. 378, 109 S.Ct. 1197 (U.S. 1989), identified two different approaches to a failure to train case: (1) deliberate indifference may be established by demonstrating a failure to train officials in a specific area where there is an obvious need for training in order to avoid violations of citizens' constitutional rights; and (2) a municipality may be held responsible under section 1983 where a pattern of unconstitutional conduct is so pervasive as to imply actual or constructive knowledge of the conduct on the part of the policy makers, whose deliberate indifference to the unconstitutional practice is evidenced by a failure to correct

the situation once the need for training became obvious.  <u>See</u> Record Document 78 at 17. Washington concedes that this case falls within the first category.

To succeed on her claim of failure to train or supervise under section 1983, Washington must demonstrate that: (1) the City failed to train or supervise the employee involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Washington's rights; and (3) the failure to train or supervise constituted deliberate indifference to Washington's constitutional rights.  <u>See</u> <u>Cousin v. Small</u>, 325 F.3d 627, 637 (5th Cir. 2003).  As a general rule, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."  <u>Thompson v. Upshur County, TX</u>, 245 F.3d 447, 459 (5th Cir. 2001) (internal quotations and citations omitted).  The plaintiff must ordinarily show at least a pattern of similar violations.  <u>See id.</u>  Moreover, "the inadequacy of training must be obvious and obviously likely to result in a constitutional violation."  <u>Id.</u>  Additionally, an expert's opinion, standing alone, is generally not enough to prove deliberate indifference.  <u>See id.</u>

As to whether the City failed to train or supervise McDuffie, there is no dispute that McDuffie, a Department of Public Works employee, was not trained as a jailer or a correctional officer.  Johnson, former supervisor of the Work Release Program, testified in his deposition that he gave McDuffie a copy of all the rules and regulations pertaining to the Work Release Program.  <u>See</u> Record Document 85, Exhibit B at pp. 69-70. However, it is clear that McDuffie was trained and supervised as to the City's sexual harassment policy.  McDuffie participated in the City's "Harassment Awareness Training" program and signed an acknowledgment for such program on October 14, 1996.  <u>See</u>

Record Document 66, Exhibit A-4.  That document evidences that McDuffie was trained as to the City's Harassment Statement, as he acknowledged receipt, explanation, and a vow to comply with the statement.  <u>See id.</u>  Further, he stated that he "was told that the City of Shreveport will not tolerate sexual harassment . . . and that I can be disciplined up to and including termination of my employment if I am found to be guilty of harassment."  <u>See id.</u>

In <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 109 S.Ct. 1197 (U.S.1989), the Supreme Court stated:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  Moreover, for liability to attach in this circumstance the identified  deficiency in a city's training program must be closely related to the ultimate injury.  Thus in the case at hand, respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs.

<u>Id.</u> at 390-391, 109 S.Ct. at 1206.  The Fifth Circuit has embraced this reasoning, holding in <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 472 (5th Cir. 1999), that "[t]he focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform, and it must be proven that the identified deficiency in  training actually caused the failure of the employee or officer to perform his duty constitutionally, <u>i.e.</u>, that the injury would have been avoided had the employee been trained under a program that was not deficient in the identified respect."

Based on this reasoning, this Court must consider whether any injury to Washington would have been avoided had McDuffie been trained under a program that instructed Work Release Program Crew Leaders on standards applicable to jailers and/or correctional

officers. Even when viewed in the light most favorable to Washington, the Court can not answer this question in the affirmative. Washington has simply failed to establish a casual connection between the alleged failure to supervise or train McDuffie as to jail and correctional officer standards and the alleged violation of Washington's rights. There is nothing in the record, especially in light of the evidence that McDuffie was trained as to the City's sexual harassment policy, to indicate that the alleged deficient training and supervision relating to jail and correctional standards actually caused McDuffie's failure to perform his duty constitutionally. Thus, the evidence does not raise a genuine issue of material fact on her claim of section 1983 liability based on the City's failure to train and supervise.

Even if this Court were to reach the third prong referenced above, i.e., that the failure to train or supervise constituted deliberate indifference to Washington's constitutional rights, Washington's evidence would still be insufficient to create a genuine issue of material fact as to the City's liability for failure to train or supervise. The law is clear that liability generally will not be imposed against a municipality based on a single instance of the lack of training or supervision causing a violation of constitutional rights. Thompson, 245 F.3d at 459. Generally, liability is only imposed where the plaintiff can show at least a pattern of similar violations. See id. Further, the plaintiff cannot rely solely on an expert's opinion to prove deliberate indifference. See id.

Here, Washington relies heavily upon the expert opinion of Jim Sida ("Sida") to prove that the City was deliberately indifferent to the treatment of City Jail inmates. She also relies heavily upon statements McDuffie made to her regarding his multiple sexual encounters with female prisoners and her belief that other female prisoners had been

subjected to sexual harassment, retaliation, and sexual touchings. <u>See</u> Record Document 78 at 21; Record Document 37, ¶ 12; Record Document 66, Exhibit C at p. 55. Again, Washington cannot rely solely on Sida's opinion to prove deliberate indifference and her belief regarding widespread sexual harassment is uncorroborated, as Rita Caldwell, a detective with the Shreveport Police Department and a sexual crimes investigator, stated "that the complaint of sexual harassment lodged by Krystal Washington was the first complaint lodged by a female inmate at the city jail with the sex crime unit alleging sexual harassment; that the records of the City of Shreveport to include jail records support this position." Record Document 66, Exhibit A. Further, the Court finds that this is not a case where deliberate indifference is demonstrated by a single incident, as Washington has not shown that the highly predictable consequence of a failure to train McDuffie as to jail and correctional standards would result in her being sexual abused and harassed. <u>See</u> <u>Estate of Davis ex rel. McCully v. City of North Richland Hills</u>, 406 F.3d 375, 385-386 (5th Cir. 2005) ("We do not suggest that a single incident, as opposed to a pattern of violations, can never suffice to demonstrate deliberate indifference. It is true that there is a so-called single incident exception, but it is inherently a narrow one, and one that we have been reluctant to expand. To rely on this exception, a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation.").

Based on the forgoing analysis, Washington's section 1983 claim against the City for failure to train and/or supervise McDuffie is dismissed.[7]

_____

[7]In her Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment, Washington cites expert opinion regarding the City's hiring and

2.  **The City's Policy of Allowing Male Employees to Supervise and/or Search Female Inmates Participating in the Work Release Program.**

The Fifth Circuit, sitting en banc, delineated the following formulation to govern the imposition of municipal liability:

A municipality is liable under section 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to *official policy*.

*Official policy* is:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

---

retention of McDuffie. See Record Document 78 at 19. Sida, Washington's expert, stated "that the hiring or retention of McDuffie was negligent in that [he] had two drug felonies on his record." Id. Washington contends that "under these circumstances, the City can be held liable for the constitutional violation by McDuffie." This Court disagrees.

A court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged before imposing municipal liability under section 1983 for a *hiring* decision. See Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (U.S. 1997). Under Board of County Com'rs of Bryan County, Okl. v. Brown, "a plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to *hire* the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference." Id. at 411, 117 S.Ct. at 1392. This Court cannot say that the plainly obvious consequence of the City's decision to hire McDuffie, even after learning of his two felony drug convictions, would be the sexual abuse and harassment of a female inmate. Thus, Washington's claim against the City for failure to screen in hiring under section 1983 is dismissed with prejudice.

Much like this Court's ruling as to Washington's section 1983 claims under the Eighth Amendment against McDuffie for sexual abuse and harassment, and while the City's conduct in hiring, training, and/or supervising McDuffie does not involve a harm of federal constitutional proportions, such finding does not foreclose the City's potential liability under Louisiana Civil Code Article 2315 for negligent hiring, training, supervising, and/or retention.

2.      A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, ***is so common and well settled as to constitute a custom that fairly represents municipal policy***. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. ***Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined***.

Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)(emphasis added).

Washington seems to allege that the City has an *official* policy of allowing male city workers to closely supervise and/or search female inmates participating in the work release program and that such policy is a violation of the Equal Protection Clause of the Fourteenth Amendment and the Eighth Amendment.[8] There is no dispute in this case that Washington was not searched; however, she argues that the mere permitting of searches by male city workers who serve as Work Release crew leaders gave an aura of authority to McDuffie and thus the policy is unconstitutional under Oliver v. Scott, 276 F.3d 736 (5th Cir. 2002).

The Court finds that Washington's sole reliance on Oliver in this case is misplaced. Oliver does not stand for the principle that male supervision of a female inmate participating in a Work Release Program is *per se* a violation of the Equal Protection Clause. Further, Washington's assertion in her brief that "the Fifth Circuit has cited with

_____

[8]As competent summary judgment evidence, the City has provided the Court with a "Shreveport Police Department, Support Division Order" pertaining to the Work Release Program. See Record Document 66, Exhibit A-6. Paragraph VIII of the document lists the "Responsibility of Work Release Crew Leaders." See id. While these responsibilities clearly include supervision, there is no mention of the ability of crew leaders to perform searches of inmates. See id. However, the effective date listed is March 1, 2003 and the revision date listed is February 15, 2003. See id. Both of these dates are well after the time period involved in this case. Thus, the Court has accepted as true Washington's allegation regarding a policy allowing searches and supervision.

approval cases from other circuits wherein there was a finding of a violation of the Eighth Amendment and the Equal Protections Clause where males were permitted to search and/or monitor females (in a private setting such as showers) under their supervision" is misleading. See Record Document 71 (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment) at 20. Such quote is on its face deceiving, if not inaccurate, as the Oliver court stated in a footnote:

> Some courts have held that cross-sex searches and monitoring can violate the Eighth Amendment's prohibition against cruel and unusual punishment. Jordan v. Gardner, 986 F.2d 1521, 1530-31 (9th Cir.1993) (finding that male guards' pat-down searches of female inmates violated the Eighth Amendment); Johnson v. Phelan, 69 F.3d 144, 152-53 (Posner, J., dissenting) (declaring cross-sex monitoring a violation of the Eighth Amendment). Oliver did not raise this argument in the district court, and he mentions the Eighth Amendment only once in his appellate brief. His decision to forego this argument is wise, given that we have refused to extend the Eighth Amendment to strip searches. Moore v. Carwell, 168 F.3d 234, 237 (5th Cir.1999).

Oliver, 276 F.3d at 743, n.9.

Washington's reliance on Oliver was her only fact, information, and/or evidence to support her abstract claim that the City's policy of allowing male city workers to closely supervise and/or search female inmates participating in the Work Release Program is unconstitutional. Accordingly, the City is not liable under section 1983. Washington has proven no deprivation of rights protected by the Constitution or federal laws that was inflicted pursuant to the City's policy of allowing male city workers to closely supervise and/or search female inmates participating in the Work Release Program.

### 3. The City's Allowing Washington to Serve Eight Days More Than She Was Originally Sentenced to Serve.

Washington alleges that the City violated her due process rights under the

Fourteenth Amendment by allowing her to serve eight more days in jail than required by her sentence.  See Record Document 78 (Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment) at 23.  Shreveport City Court minutes evidence that on October 8, 2002, Washington pled guilty to one count of underage entering a licensed premise and was sentenced to pay a fine of $100.50 or to serve 10 days in the Shreveport City Jail, consecutive with any other sentence.  See Record Document 66, Exhibit A-5.  Also on October 8, 2002, Washington pled guilty to one count of aggravated assault and was sentenced to 90 days in the Shreveport City Jail, to be served consecutive with any other sentence.  See id.  Shreveport City Jail release records indicate that Washington was incarcerated in the City Jail from October 3, 2002 until November 7, 2002.  See id.

Paragraph VII of the  "Shreveport Police Department, Support Division Order" pertaining to the Work Release Program states:

> The judges of the Shreveport City Court have ordered that prisoners who participate in the Program will receive credit as follows:  For each day worked they will receive 3 days credit plus $30.00 towards their fine.

Record Document 66, Exhibit A-6.  There is no dispute that Washington voluntarily participated in the Work Release Program.  Work Release Program records indicate that Washington worked eight hours each day beginning Tuesday, October 8 through Thursday, November 7, 2002.  See id.   This record is also consistent with deposition testimony of Johnson, who stated that the "three-for-one" credit begins the day that an inmate is signed up for the program.  Record Document 85, Exhibit B at p.24, lines 8-11.  Work Release Programs records, attached as competent summary judgment evidence, show that Washington signed her "Work Release Program Agreement" and her "Work

Release Program Injury Release" on October 8, 2002. See Record Document 66, Exhibit A-6. Based on these records, Washington worked 31 days in the Work Release Program and, under the "three-for-one" program, would receive 93 days credit based on that work.

In the Johnson deposition, there is discussion regarding a "two-for-one" credit system that applied to Washington from the date she was incarcerated, October 3, to the time she began participating in the Work Release Program on October 8:

> Q:      Okay.  If she started serving her jail time on October the 3rd, she would have got two for one from the third –
>
>                   A:      Right.
>
> Q:      – through the 8th.
>
> A:      That's right.

Record Document 85, Exhibit B at p.26, lines 13-18. Despite the fact that the Court could not readily ascertain which documents Washington's counsel and Johnson were reviewing during the deposition, the Court will assume that the "two-for-one" credit system applied to Washington from October 3 to October 7, a period of five days.  Based on this, she would receive 10 days credit, making her total credit 103 days.

The Court admits that Washington's *credit* for 103 days is over her actual 100 day sentence.  Notwithstanding, Washington's claim that the City violated her due process rights under the Fourteenth Amendment by allowing her to serve more time in jail than required by her sentence still fails.  Washington actually served only 36 days of her original 100 day sentence.  Further, Washington alleged in her deposition that Johnson was responsible for this change in her sentence; yet, she did not name Johnson as a defendant in this lawsuit.  See Record Document 66, Exhibit C at p. 29, lines 19-23.  Thus,

Washington is apparently asserting that the City is liable for this occurrence under section 1983 municipal liability. Washington has not asserted that her sentence was extended due to some official City policy so she must prove:

> A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

Webster, 735 F.2d at 841. Here, Washington cannot prove a persistent, widespread practice of city officials or employees extending, changing, or somehow allowing Shreveport City Jail inmates to "overstay" their sentence, which is so common and well settled as to constitute a custom that fairly represents municipal policy. Washington has come forward with no facts or information to support the existence of such a persistent, widespread practice. At most, her contentions are conclusory allegations and must fail because conclusory allegations of a municipal practice or policy are insufficient. See Campbell v. Laurel, 1990 WL 605642 (W.D. Mich.), citing Reneve v. Charles County Comrs., 882 F.2d 870 (4th Cir. 1989); Bartalone v. County of Berrien, 643 F. Supp. 574 (W.D. Mich. 1986).

Based on the foregoing analysis, all of Washington's section 1983 claims against the City, and McDuffie in his official capacity, fail as a matter of law.

### D. Washington's State Law Claims.

#### 1. Louisiana Constitutional Claims.

Washington also asserts claims under Article One, Sections 2 (due process) and

3 (equal protection) of the Constitution of the State of Louisiana. Washington admits that her claims under the Constitution of the State of Louisiana are coexistent with her section 1983 claims asserted under the United States Constitution. <u>See</u> Record Document 78 (Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment) at 6. Thus, the same reasoning applies to both Washington's Louisiana and federal constitutional claims and, accordingly, Washington's state constitutional claims are dismissed with prejudice.

### 2. Remaining State Law Tort Claims Against McDuffie and the City.

Washington further asserts state law tort claims pursuant to Louisiana Civil Code Article 2315 against McDuffie and the City. Washington alleges that McDuffie committed the torts of battery and intentional infliction of emotional distress. She contends that the City was negligent in hiring, retaining, supervising, and/or training McDuffie. Washington also alleges that the City is vicariously liable under Louisiana Civil Code Article 2320 for McDuffie's actions and the resulting injury to her.

A district court may, and the general rule is that it should, decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Engstrom v. First Nat'l Bank of Eagle Lake</u>, 47 F.3d 1459, 1465 (5th Cir.), <u>cert. denied</u>, 516 U.S. 818, 116 S.Ct. 75 (1995) (district court did not abuse discretion by remanding state law claims). The appropriate disposition of Washington's remaining state law tort claims is, therefore, to dismiss them without prejudice.

III.     **CONCLUSION.**

Based on the foregoing, the Motion for Summary Judgment (Record Document 66) filed by the City is **GRANTED IN PART** and **DENIED IN PART** and the Motion for Summary Judgment (Record Document 79) filed by McDuffie is **GRANTED IN PART** and **DENIED IN PART**.  Washington's federal claims under 42 U.S.C. § 1983 are hereby **DISMISSED WITH PREJUDICE**; Washington's state constitutional claims are **DISMISSED WITH PREJUDICE**; and Washington's state law tort claims against McDuffie and the City are **DISMISSED WITHOUT PREJUDICE** as this Court declines to exercise jurisdiction over those claims.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 26th day of June, 2006.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE